MARTIN COUNTY BANK v. FRANK A. DAY and Another.

July 1, 1898.

Nos. 11,197—(162).

73   195
f79   467

73   195
85   212

**Libel—Manager of Bank — Evidence that Publication Referred to Plaintiff.**

Although a defamatory article appears on its face to refer to the managing agent of a corporation individually, it may be shown by extrinsic facts that it was published of and concerning the corporation acting through its agent, and would be so understood by those who read it.

Appeal by defendants from an order of the district court for Martin county, Quinn, J., overruling their demurrer to the complaint. Affirmed.

*C. D. & T. D. O'Brien* and *Voreis & Mathwig*, for appellants.

The words complained of must be upon their face applicable to plaintiff, or can be made so by a recital of facts which demonstrate their applicability without violating or straining their natural sense and meaning. McCallum v. Lambie, 145 Mass. 234; Petsch v. Dispatch P. Co., 40 Minn. 291.

*Munn & Thygeson*, for respondent.

A corporation, like an individual, has a right to have and does have a business reputation. The words written and published were defamatory and actionable per se, because they tended to injure such reputation of plaintiff. Townshend, S. & L. § 262; 5 Thompson, Corp. § 6310; Shoe v. Thompson, 18 Abb. Pr. 413; Mutual v. Spectator, 18 J. & S. 460. That the article complained of applied to, and was intended to apply to, plaintiff appears beyond question from the complaint. Petsch v. Dispatch P. Co., 40 Minn. 291; Traynor v. Sielaff, 62 Minn. 420.

MITCHELL, J.

This was an action for libel. The complaint alleges that at the time of the publication the plaintiff was a banking corporation, carrying on a general banking business; that one Ward was, and for a long time had been, its principal stockholder, one of its principal officers, and actively engaged in the management of its affairs, which was well known in the community; that the defendants printed and published of and concerning the plaintiff the following false and defamatory article:

"The Shylock, buying deposits at the largest price ever paid in Minnesota, shouts, 'Plenty of money!' while at the same time he is losing in every line of business in which he is engaged. It is an open secret that, in his grasping desire to own the earth, the Shylock has 'bit off more than he can chew,' and that he is having very hard sledding financially. The county money was his only salvation."

The complaint further alleged that by the term "Shylock," as used in this article, as well as the pronouns "he" and "his," the defendants had reference to, and were understood to refer to, the plaintiff, through Ward, as its officer, agent and manager, and that people who read the article so understood it.

The defendants demurred, on the grounds (1) that the complaint did not state a cause of action, and (2) that it appeared upon the face of the complaint that the words published could not apply to the plaintiff. From an order overruling their demurrer, the defendants appealed.

It is hardly necessary to say that such language, if used with reference to a banker or banking corporation, is susceptible of a defamatory meaning, as containing an imputation of insolvency and as tending to impair his or its credit.

The main contention, however, of the defendants, is that it is apparent upon the face of the article that it could have no application to a corporation; that a bank cannot be a "Shylock"; that it cannot shout "Plenty of money!" or "bite off more than it can chew"; that the pronouns "he" and "his" cannot apply to a corporation; that the article is descriptive of the methods and conduct of an individual, and not of a corporation.

While a corporation has in law an existence distinct from that of its stockholders or managing officers, yet, as it can only act through natural persons as its agents, its president or other managing agent often becomes so identified with it in the popular mind that we use his name when we mean the corporation acting through him. There is no more frequent instance of this than in the case of a small country bank, which is practically under the exclusive management and control of one man. In such cases, when it is meant that the bank is doing certain things, it is quite common in popular speech to say that the managing officer (naming him) is doing them, meaning, and understood as meaning, that the bank is doing them through its managing agent. The same is true when speaking of the business condition of an institution. We not infrequently say, for instance, that A. is making or losing money, or is insolvent or hard up, when we mean, and would be understood as meaning, the corporation or institution of which A. is the manager. So, in the present case, if the defendants in this article referred to the business methods and financial condition of the bank as conducted or produced by Ward as its managing agent, and the bank and Ward were so identified in common understanding and popular speech that the article would be so understood, the publication would be defamatory of the plaintiff, although on its face it appeared to refer only to Ward personally. In short, it may be shown by extrinsic facts that the article referred to the plaintiff, and would be so understood by those who read it. It might be very difficult to apply to the plaintiff, except in a very figurative sense, some of the expressions used, but the substance and sting of the article, if published of and concerning it, consists in the imputation that it was losing money, was hard up financially, and was only saved from failure by the "county money."

Under the statute (G. S. 1894, § 5257), it is not necessary, in an action for libel or slander, to plead any extrinsic facts for the purpose of showing the application of the defamatory matter to the plaintiff, but it is sufficient to allege generally that it was published or spoken concerning the plaintiff.

In addition to this general allegation, the plaintiff in this case further alleged certain specific extrinsic facts, evidently for the

purpose of showing the application of the defamatory matter to it. Assuming, without deciding, that these facts, if proved, would be insufficient to show the application of the article to the plaintiff, we do not think that it would be limited on the trial to proof of the facts alleged, but might introduce evidence of other extrinsic facts. While a party is not required to plead extrinsic facts for the purpose of showing the application of the defamatory matter, yet if he does so, and the facts thus pleaded show that it applied to some one else, and not to him, the special allegation would control the prior general one, and the complaint would be bad. But in this case we do not think that the extrinsic facts pleaded show that the defamatory article was published of and concerning Ward, and not the plaintiff.

Order affirmed.