PEOPLE'S UNITED STATES BANK, Appellant, v.
RUSSELL P. GOODWIN et al., Respondents.

St. Louis Court of Appeals, May 3, 1910.

1. **LIBEL AND SLANDER: Corporations: Right of Action by.**
While, where a publication is a libel on the individual mem-
bers of a corporation, but not on the corporation, the latter
cannot recover therefor, unless it suffers special damage, yet a
corporation may maintain an action for damages caused by a
libel affecting its pecuniary interests by reflecting on its sol-
vency, the honesty of its management, or the quality of its
products.

2. ——: ——: **Libel of Bank: Charge of Misappropriation of
Funds by Officers.** A published statement that a fraud order
was issued against plaintiff bank by the Postmaster-General,
for the reasons that sales of its stock had been made and de-
posits induced upon false representations and that the funds of
the institution were being misapplied, meant that plaintiff's
managing officers, acting for the corporation, were applying
its funds to illegal purposes, and not that the officers acting as
individuals were doing so, and hence was actionable as a libel
against the bank, without averment of special damage.

3. ——: ——: **Charging Misconduct by Officers.** An ac-
cusation of misconduct on the part of corporate officers, acting
as and for the corporation, which discredits its solvency or im-
pairs its business, is a libel on the corporation, and is action-
able by it, without averment of special damage.

4. ——: ——: **Libel of Bank: Fraud Order Issued by Post-
master-General.** If defendant stated in writing that the reason
why the Postmaster-General issued a fraud order against the
plaintiff bank was because its funds were being misapplied,
when the Postmaster-General gave no reason for issuing the
order, defendant is liable in an action against it by the bank
for libel.

5. ——: ——: ——: ——: **Privileged Matter.** The Post-
master-General, being a high official of the National Govern-
ment whose acts as such are of interest to the general public,
a fair publication, made as a matter of news or public con-
cern and without actual malice, of what such officer   does
officially and the reasons he gives for his acts is privileged.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Williams,* Judge.

REVERSED AND REMANDED.

*Carter, Collins & Jones* and *Barclay, Fauntleroy & Cullen* for appellant.

(1) Under the modern law a banking corporation is fully entitled to protect and to enjoy its good name and reputation against attack and injury by written or printed defamation, impairing public confidence in its conduct, as is a private individual. State v. Boogher, 3 Mo. App. 445; Boogher v. Life Assn., 75 Mo. 322; St. James Academy v. Gaiser, 125 Mo. 517; Coal Co. v. Gross, 126 Wis. 24, 105 N. W. 225; Railroad v. Pub. Co., 48 Fed. 206; Sternberg Co. v. Miller Co., 170 Fed. 298. (2) The statutory definition of libel in Missouri accords with the general law elsewhere, and so a printed publication "tending" to "deprive him of the benefits of public confidence" is a libel whether it concerns an individual or a business corporation. R. S. 1899, sec. 2259; Bank v. Day, 73 Minn. 195; Coal Co. v. News Assn., 1 Q. B. 133; Journal Co. v. Maclean, 23 Ont. App. Rep. 324; Minteer v. Bradstreet, 174 Mo. 486; Cox v. Lee, L. R. 4 Exch. 284 ("ingratitude"). (3) where the natural effect of the defamatory written matter is to subject it object to injurious thought or opinion of the reader in relation to his business or trade it is actionable of itself, without more. A charge or written intimation that a business corporation is mismanaged is naturally injurious to its name, credit and reputation, and is actionable in itself. Linotype Co. v. Machine Co., 81 L. T. 331 (House of Lords) ; Sternberg Co. v. Mfg. Co., 170 Fed. 298; Bank v. Thompson, 23 How. Pr. 253; Brewery Co. v. Bradstreet, 9 B. C. R. 435. (4) Where a meaning is ascribed by *innuendo* (as fully as in this case) to the libelous matter, and that meaning is damaging to the object of the writing,

in respect of its or his business, no special damage need be alleged or proved, whether the victim be an individual or a company. Boogher Case, 75 Mo. 322; Keemle v. Sass, 12 Mo. 499; Riding v. Smith, 1 Ex. Div. 91; Thomas v. Williams, 14 Ch. Div. 864; Odgers, Libel & S. (4 Ed., 1905), p. 36; Butler v. Hawes, 7 Calif. 87; Chinese Assn. v. Pub. Co., 13 B. C. R. 141; Boal v. Printing Co., S. C. 1120. (5) If the alleged defamatory matter is susceptible of an innocent interpretation but a defamatory one is alleged, it is a question of fact which interpretation is proper in view of the circumstances proved at the trial. In this instance, however, it is not doubtful or ambiguous what the average reader would understand by the charge that a bank's funds were being "misapplied." Williams v. Beaumont, 10 Bing. 260; Callahan v. Ingram, 122 Mo. 367; Hunter v. Ferguson, 8 S. C. (5th series) 574. (6) A written or printed charge of misapplication of the funds of a banking corporation is substantially a charge of criminal misconduct in the management of the bank. Bank v. Thompson, 18 Abb. Pr. 413; Jewett v. U. S., 100 Fed. 832, 53 L. R. A. 568; U. S. v. Youtsey, 91 Fed. 864; Compare Winchester v. Howard, 136 Calif. 432, 64 Pac. 692. (7) The National Bankrupt Law and the Bankruptcy Act both designate "misappropriation" or "misapplication" of funds as closely akin to embezzlement thereof, or to abstracting them. The former defines such act as a crime, punishable by imprisonment for at least five years (now a felony, U. S. Penal Code, 1910, sec. 335, Act March 4, 1909); the Bankruptcy Act declares such conduct (when the basis of indebtedness) enough to exclude the effect of the release given by a discharge in bankruptcy. R. S. U. S., sec. 5209; 5 Fed. Stats. Ann., p. 145, sec. 5902; 1 Fed. Stats. Ann., p. 578, sec. 17; 10 Id. (Act, 1903), p. 42, sec. 5 (amending sec. 17). (8) The Missouri Statutes make misapplication of a bank's funds a ground for winding up its affairs, because it amounts to "illegal

and unsafe or unauthorized practices" of a bank. And the misapplication of its funds by any officer of a corporation by converting same to his own use is a criminal act. R. S. 1899, secs. 1305, 1912. (9) No special damage need be alleged in such a case as the facts recited here exhibit, where the libelous charge has naturally a damaging effect on the business or trade of or public confidence in, the incorporated victim of the charge. To quote Lord HALSBURY's summary of the law of England on this point, a corporation "can maintain an action for a libel reflecting on the management of its trade or business, and with this without alleging or proving special damage." 8 Halsbury's, Laws of England, "Corporations," p. 390, sec. 857; State v. Boogher, 3 Mo. App. 442; Coal Co. v. News Assn. (1894), 1 Q. B. 133; Linotype Co. v. Machine Co., 81 L. T. 331 (Halsbury, L. C.). Neither allegation nor proof of any special damage is requisite in an action for libel which is defamatory *per se,* but the damages may be alleged "at large" (as the English judges say) or merely generally, as usual in this country. South Hetton Co. v. News Assn., 1 Q. B. 133; 25 Cyc. 453 and many cases cited. (10) No statement of any "extrinsic facts" or colloquium is requisite to point a moral or adorn the tale involved in a charge that the funds of a banking corporation are "being misapplied," further than the application of the charge to plaintiff by the statutory form (prescribed by the code to abbreviate the verbosity of ancient special pleading) and the facts stated in the petition under review. That the defamatory matter was written "of and concerning plaintiff" (as alleged in the petition) is admitted because specifically "not controverted in the answer." R. S. Mo., sec. 635; Caruth v. Richeson, 96 Mo. 186.

*Chester H. Krum* for respondents.

STATEMENT.—This appeal was taken from a ruling of the court excluding any evidence on the ground the

petition did not state a cause of action. The plaintiff took a nonsuit in consequence of that ruling and after fruitless motions, appealed. The petition is as follows:

"Plaintiff, People's United States Bank, by its attorneys states that said bank was duly organized in the year 1904 as a banking corporation, under the general laws of the State of Missouri, and especially under article 8 of chapter 12, of the Missouri Revised Statutes of the year 1899, and as such corporation in November, A. D. 1904, was duly granted a certificate by the Secretary of the State of Missouri to the effect that said bank had complied with the provisions of said corporation laws; that during the said month of 1904, plaintiff began the business of banking as such corporation accordingly, and its franchise and good will as such then became and were of great value, and plaintiff is now a banking corporation under the laws of Missouri.

"Plaintiff further states that said defendants Russell P. Goodwin and Robert M. Fulton, maliciously contriving and designing to injure plaintiff's franchise, good name, fame and reputation, did, on or about the 19th day of March, A. D. 1907, wickedly, maliciously, knowingly and intentionally, falsely, wrongfully and unlawfully compose, write, instigate, dictate, publish and circulate, of and concerning said plaintiff, and cause to be written, composed, dictated, published and circulated, of and concerning said plaintiff, a certain false, malicious, scandalous and defamatory libel of the following tenor, to-wit: "The funds of the institution" (meaning thereby of plaintiff) "were being misapplied," meaning thereby to charge and in fact charging, that the plaintiff was misapplying, and causing and permitting its funds to be misapplied, on July 6, 1905, as further shown by the context of said libel, which context and its relation to said libel are shown by the following printed language composed, instigated, writ-

ten, printed, published and circulated by said defendants wherein said libel appears, to-wit:

" 'One of which was the People's United States Bank, against which a fraud order was issued by the Postmaster-General on July 6, 1905, for the reason that sales of its stock had been made and deposits induced upon false representations and promises and that the funds of the institution were being misapplied.'

"That by defendants' said false, malicious and defamatory libel charging that the funds of the bank (meaning thereby of plaintiff) were being misapplied, said defendants meant and intended thereby to allege and charge that said bank (the plaintiff) on July 6, 1905, was being improperly and illegally managed, directed and conducted, in that said funds were being misapplied by said bank to other uses and purposes than those which were lawful and proper under the charter and by-laws of said bank and the laws of this State then regulating and directing the management and action of said bank.

"That by said false and malicious libel plaintiff has been damaged and injured in its good name, fame and reputation, and will continue in future to be so damaged in the sum of twenty-two hundred dollars, in actual damages; and inasmuch as the wrong and injury aforesaid was willfully, maliciously and intentionally done by defendants to plaintiff, the latter is therefore justly entitled to demand and recover, and it does hereby demand of defendants on that account the further sum of twenty-two hundred dollars as punitive and exemplary damages therefor.

"Wherefore plaintiff prays a verdict and judgment against said defendants for the total damages aforesaid in the sum of forty-four hundred dollars and for its costs."

GOODE, J. (after stating the facts).—Doubtless what was intended by the fraud order said in the alleged

libel to have been issued by the Postmaster-General, was an order based on the statute of the United States authorizing that official to instruct postmasters to return all registered letters to the postmaster of the office if they were mailed, with the word "fraudulent" plainly written or stamped on the outside, in cases where such letters arrived directed to a person, firm, bank, corporation or association of any kind, on evidence satisfactory to the Postmaster-Geeneral that the person, bank, company or association is engaged in conducting a lottery . . . or any scheme or device for obtaining money or property of any kind through the mails by means of false or fraudulent pretenses, representations or promises. [2 Compiled Stat. U. S. (1901), sec. 3929.] In support of the judgment below it is argued the supposed libelous matter, to-wit, "the funds of the institution were being misapplied," was no reflection on the bank itself, but on its officers, and if actionable at all, was so only on behalf of said officers; not of the bank. Proceeding with this argument, it is said that if the words meant the bank was being improperly and illegally managed and conducted, as the bank could not conduct itself, the statement did not libel the bank. In dealing with this question we have looked into every authority we could find without becoming sure what the law is. A bank or other business corporation may maintain an action for a libel which affects its pecuniary interests by casting an imputation on its solvency, the honesty of its management or, in the case of a vending or manufacturing corporation, on the quality of its wares or products. [Odgers, Libel and Slander, 552; Townshend, Libel and Slander (4 Ed.), sec. 263.] But a company cannot recover for words which do not libel it, but its individual members; at least unless it suffers a special damage from the libel, and none is alleged in the present case. [Odgers, supra.] The point of doubt is whether the words declared on in the present case reflect on the bank itself so di-

Bank v. Goodwin.

rectly instead of incidentally, as to libel it.    To say a
clerk of a merchant had embezzled a large part of the
merchant's capital might impair confidence in the lat-
ter's solvency, so as to enable him to maintain an action
for libel if special damage was averred and proved.    We
do not think the charge would be actionable *per se* at
the suit of the employer.    As regards a corporation the
conditions are somewhat different, for it can only act
through its officers.   Our best judgment is, the libel in
question is expressed in such a form that it might be
understood naturally to mean the managing officers of
the institution, by acts which were those of the cor-
porate body, were applying its funds to purposes and
in ways a banking company is not allowed to apply
funds; not that said officers were, as individuals, ap-
plying the funds in illegal ways for their own benefit
or some one else's—that they were misapplying by acts
of the corporate body.   The context of the alleged libel
is pointed to in the petition as explanatory of the ob-
ject and meaning of the libel.    That context said a
fraud order had been issued against the People's United
States Bank, thereby designating as the object of the or-
der the corporation itself.   It then proceeded to say the
reason for the action of the Postmaster-General was
that sales of the bank's stock had been made and de-
posits induced upon false representations and promises
and the funds of the institution were being misapplied.
A bank would induce deposits, whether by fair or by
false representations, in the way the bank would do
any other act.   It is true the officers would move in the
matter and by their conduct deposits would be induced;
but nevertheless the inducement would be regarded as
having been made by the bank.   The conduct imported
by the words charged as libelous—that the funds of the in-
stitution were being misapplied—is not so obviously
corporate conduct, for the reason that it might be taken
to mean the funds were embezzled or otherwise misap-
plied to the detriment of the institution and its share-

holders.    But the expression, "the funds of the bank were misapplied" could be understood to signify it was being illegally managed and conducted by those in control in order to make money for it and its stockholders by speculation and other unlawful methods.    If the libel would be naturally taken to mean unlawful corporate action in dealing with the funds, it libeled the corporation, whether the illegal application was intended to profit it or not.    Such conduct would tend to deprive the bank "of the benefits of public confidence," to quote words from our statute defining libel.    [R. S. 1899, sec. 2259.]    We have found many cases wherein libelous matter which discredited the solvency of a corporation or was likely to injure its trade or business was held to be actionable by the company and that too without averment or proof of special damage—a point that might as well be disposed of here.    [Shoe & Leather Bank v. Thompson, 18 Ab. Pr. 413; Knickerbocker Ins. Co. v. Ecclesine, 42 How. Pr. 198, 207; Arrow Steamship Co. v. Bennett, 73 Hun 81; Railroad v. Publishing Co., 48 Fed.    206;    American    Book    Co. v.    Gates,    85 Fed. 729; Sternburg Mfg. Co. v. Miller, etc., Mfg. Co., 170 Fed. 298; Printing Co. v. Maclean, 23 Ont. App. 324; Coal Co. v. News Assn., L. R. 1 Q. B. (1894) 133; Linotype Co. v. Typesetting Co., 81 L. T. 332; Gas. & Coal Co. v. Rose, 126 Wis. 34; Filtration Co. v. Lingane, 19 R. I. 316; Midland Pub. Co. v. Trade Journal, 108 Mo. App. 223, 83 S. W. 298; Martin Co. Bank v. Day, 73 Minn. 195.]    If the matter alleged libeled plaintiff, we have no doubt the petition is good though it contains no averment of special damage, and this the authorities supra demonstrate.    In only two of them, we believe, or at most three, were the libelous words of such import as to bring the decision into point on the question of whether the libel charged in the petition at bar can be taken to libel the plaintiff. In Bank v. Day, supra, the publication called some one a "Shylock," spoke of him as "shouting, 'Plenty of money,'" while at

the same time he was losing in every line of business;" said it was an open secret he "had bitten off more than he could chew and was having hard sledding financially; that the county money was his only salvation." The complaint alleged a man by the name of Ward who was the principal stockholder of the bank, one of its main officers, actively engaged in its management, well known in the community, was referred to by the word "Shylock;" that the plaintiff was referred to through him as its agent and manager and the people who read the article so understood it. The complaint was demurred to mainly on the ground it appeared the words published could not apply to the bank. The Supreme Court of Minnesota said the language was clearly defamatory and 'if used in reference to the corporation, contained an imputation of insolvency and tended to impair its credit. Further reasoning on the question, the court said a corporation could only act through its managing officers, and if the article referred to the financial condition of the bank as produced by Ward as its managing agent, and the bank and Ward were so identified in popular understanding and speech that the article would be defamatory of the bank, though it appeared on its face to refer to Ward personally, then it might be shown by extrinsic facts the article referred to plaintiff and would be so understood by those who read it. That case goes far and much farther than we need go to hold the matter in question in the present case was defamatory of plaintiff. As said, it probably would be understood to charge the plaintiff bank with dishonest and illegal management of its funds, and thereby impair confidence in its stability and diminish its custom. In Shoe & Leather Bank v. Thompson, the alleged libel said there were counterfeit notes of the bank and the signatures on the genuine notes were so alike, the bank's officers were in doubt which were good. Those words were held to libel the bank as tending to injure its business and impair its credit. In

Linotype Co. v. Typesetting Co., the libel discredited the efficiency of typesetting machines manufactured by the plaintiff, by saying five of said machines had been used in a newspaper office for a short time and removed after trial. The contention was this criticism of the machines manufactured by the plaintiff did not libel the plaintiff. The court held otherwise, on reasoning, the effect of which is that the publication would injure the business of the company by injuring the reputation of its machines, and was a reflection on the plaintiff in the way of its trade. Two analogous cases were cited in the opinion in support of its doctrine and do support it; which is enough to say, without digesting them. [Harmon v. Delaney, 2 Stra. 898; Evans v. Harlowe, 5 Q. B. 624.] In Railroad Co. v. Pub. Co., 48 Fed. supra, the court said language which charged a railway company with such incapacity or neglect in conducting its business that belief in the truth of the charge would cause persons not to employ it as a common carrier, was libelous. Similar statements of the law may be found in other cases; and, of course, neglect and misconduct in management would result from resolutions and actions of the officers of a corporation, just as a misapplication of the funds of plaintiff bank would; but in either instance the conduct of the officers would be, in legal consequence, the conduct of the company. Therefore the courts seem to hold that an accusation of misconduct on the part of corporate officers when acting as and for the corporation, which discredits the solvency of the company or will impair its business, is a libel on the corporation.

It is urged for defendants the words charged cannot be regarded as a libel, because they were the statement of a reason, whether a statutory one or not, why the Postmaster-General issued a fraud order against plaintiff. On the face of the petition it is ambiguous whether the publication intended to say the Postmaster-General had assigned such a reason for his order, or the

defendants were undertaking to explain the issue of the order by imputing reasons to the Postmaster-General. If that official gave no such reason, then defendants are liable unless they can prove the truth of the charge. The question of difficulty is whether or not, if the Postmaster-General did assign the published matter as a reason for his action, this clothes said matter with a *quasi* privilege, so defendants are not liable unless they published from express malice. Authorities on this question are meager and perhaps not harmonious. The Postmaster-General is a high official of the National Government and his acts as such are of interest to the general public. We simply say that in our judgment a fair publication, made as a matter of news or public concern and without actual malice, of what such an officer does officially and the reasons he gives for his acts, should be privileged, and we hold it is upon persuasive authorities, though we find none on either side of the question in this State. [McClure v. Pub. Co., 38 Wash. 160; Meteye v. Times Dem. Co., 47 La. 824; Wason v. Walter, L. R. 4 Q. B. 73; Connor v. Pub. Co., 183 Mass. 475; 25 Cyc. 410, and cases cited in notes.] In said treatise the rule is thus stated: "An accurate and impartial account of executive or legislative proceedings and investigations is privileged when made in good faith." That ought to be the law, considering the widely diffused interest among the people in what great officers of the government do in their official capacity, and the beneficial influence on the conduct of public affairs of disseminating information on the subject. We do not see why the public is not entitled to be informed the Postmaster-General has issued a fraud order against some person or company and of the reason assigned for doing so, but think no one will be harmed and many perhaps helped on the whole, by publishing the facts.

The judgment is reversed and the cause remanded. *Reynolds, P. J.,* concurs; *Nortoni, J.,* not sitting.