Jesse **TURNBULL**, Plaintiff-Appellant,

v.

The **HERALD COMPANY, d/b/a Globe-Democrat Publishing Company,** Defendant-Respondent.

No. 33696.

St. Louis Court of Appeals, Missouri.

Oct. 27, 1970.

Lawrence O. Willbrand, St. Louis, for appellant.

Hocker, Goodwin, Gibbons & Fehlig, Hugh E. Gibbons, St. Louis, for respondent.

WEIER, Commissioner.

Plaintiff sued defendant publishing company for an alleged libel. Trial by jury

resulted in a verdict for plaintiff awarding him $2,500.00 actual damages and $2,500.00 punitive damages. Acting upon after-trial motion, the court denied that part of the motion requesting that the verdict and judgment be set aside and that judgment be entered in favor of defendant in accordance with defendant's motion for a directed verdict. But it set aside the judgment and sustained defendant's motion for a new trial because of error in giving the verdict directing instruction offered by plaintiff.

The controversy arose out of the publication of a news article in the St. Louis Globe-Democrat, a daily newspaper in St. Louis, Missouri, on February 18, 1969. The article, together with the headline, as set forth in the petition and admitted in the answer, read as follows:

"RAID ON HOUSE FINDS THOUSANDS IN JEWELRY

"Jessie Turnbull, 48, was arrested about 8:30 p. m. Monday when police raided his home at 206 Douglas St. and found thousands of dollars in jewelry, police reported.

"Turnbull was booked suspected of burglary, buying and receiving stolen goods and being a suspect from Florissant.

"Included in the items found were watches, rings, cufflinks, jeweler's tools and watch parts. About 15 or 20 antique pocket watches also were found, police said.

"Police believe some of the items taken in a burglary at the Bill Mueller Jewelry store, 161 Cross Keys Shopping Center, Florissant.

"Turnbull was arrested by members of Maj. John Doherty's special investigative task squad, a group which was formed recently."

Plaintiff in his petition declared the article was untrue and was published "intentionally, willfully, wantonly, and maliciously." Defendant denied this assertion and affirmatively pleaded the defenses of truth and privilege.

There was no dispute over the facts that Jesse Turnbull, the plaintiff, had been arrested by the police at his home, and that they found jewelry there. The police held plaintiff for investigation and after twenty hours released him without any charge being filed. Plaintiff contended, however, that two statements in the article were false and that defendant should therefore respond in damages. The first of these is the report that the police in raiding plaintiff's home found thousands of dollars in jewelry, whereas, according to plaintiff, the value of the jewelry was about five hundred dollars. The second misstatement was the report that some of the items were taken in a burglary at the Bill Mueller jewelry store in Florissant. According to the newspaper account, this statement was described as being believed by the police officers. The newspaper reporter testified this information was given him by the police. A policeman who was involved in the investigation and arrest testified that he believed this jewelry came from that source. The police had Mueller come to police headquarters to look at the jewelry. Plaintiff related in his testimony that a man he believed to be Mueller came to the police station after plaintiff's arrest, said he was from the jewelry company, but failed to identify the jewelry as being property of the company.

Defendant on appeal maintains that its motion for directed verdict at the close of all the evidence should have been sustained. It contends the court below should have entered judgment in favor of the defendant because the publication was substantially true and those portions claimed to be libelous were inconsequential or slight inaccuracies which were immaterial if the main portion or charge of the article was true and correct. It further asserted the article was a report of police action; there was no proof of malice; and hence privilege was a complete defense. These

contentions, if sustained by us, would rule the case and prevent any further consideration of error in the verdict directing instruction found by the trial court. This is for the reason that as in other tort actions, a court has the duty to direct a verdict for the defendant if the evidence fails to sutain plaintiff's case. Bernhardt v. Armbruster, Mo.App., 217 S.W.2d 759, 762[1].

■ First we will consider the defense of truth, since if the facts stated are true, the defense of privilege is not necessary because truth is always a defense to a charge of libel. Constitution of Missouri, V.A.M.S., Art. 1, Sec. 8; Civil Rule 55.22, V.A.M.R.; Pulliam v. Bond, Mo., 406 S.W.2d 635, 642[10]. The test to be administered in determining accuracy is whether the article is substantially true. It is not necessary that the precise facts contained in the report are literally true. "Slight inaccuracies of expression are immaterial if the defamatory charge is true in substance." Kleinschmidt v. Johnson, Mo., 183 S.W.2d 82, 86[9]. See also Kleinschmidt v. Bell, 353 Mo. 516, 183 S.W.2d 87, 90[2]; MAI 2d Ed. No. 32.12. As stated in I Hanson: Libel and Related Torts, Sec. 99, p. 82:

> "Historically, a defendant raising this defense was required to prove the literal truth of each and every detail of his statement. * * * often carried to absurd extremes. There is a tendency now to require only that defendant show his statement was substantially true, that is, that the gist or sting of the statement was true."

The test then to be applied to the newspaper account of the arrest of the plaintiff was whether it was substantially accurate. There is here no doubt that the arrest was made. Plaintiff was held suspected of burglary. He admitted the arrest in his testimony. The gist of the article was the account of the arrest. This was the part that carried the sting and would have been defamatory if untrue. But plaintiff himself admits this to be true. His concern

and admitted theory of his counsel is defamation by publication of the value of jewelry found in the raid at "thousands of dollars" and the recitation of the opinion or belief of the police officers that some of the items were taken in a burglary of the Mueller jewelry store.

■ As to the value of the jewelry, preliminary estimates of value by persons who are not expert are frequently inaccurate and apparently were inaccurate in this instance. But the plaintiff testified the items had a value of five hundred dollars, which, although much less than the amount reported, is nevertheless a substantial sum. As a matter of fact, in an arrest for burglary it would make no great difference what value the items bore. The sting of the article is the arrest of plaintiff suspected of burglary. In the case of McCracken v. Evening News Association, 3 Mich.App. 32, 141 N.W.2d 694, a warrant was issued specifying fraud amounting to approximately $50,000. The newspaper article reported the amount as $100,000. On appeal the judgment allowing recovery in the lower court was reversed and remanded for entry of judgment for the defendant. The appeals court found this account of the larger amount was an inaccuracy which did not alter the complexion of the essential facts. It would have no different effect on the reader's mind than that produced by the literal truth. There was no proof that such a variance would cause damage to plaintiff. We have the same opinion on the effect of the variance between the testimony of plaintiff as to value and the news report in the case before us.

■ Turning now to the defense of truth as it applies to that portion of the article which recited police believed some items to have been taken in a burglary at the Mueller jewelry store, we do not arrive at the same conclusion. Since plaintiff was in possession of items of jewelry at the time of the arrest for burglary, by innuendo, the reader of the article could readily infer that plaintiff had burglarized

or that he had bought and received stolen jewelry from that store. This was false under the evidence. The witness from this store had failed to identify any of the items. Charges were not prosecuted after the arrest. Turnbull was released. One may not seek justification in stating false facts about someone merely because another person has stated them. Warren v. Pulitzer Pub. Co., 336 Mo. 184, 78 S.W.2d 404. But defendant also asserts that the evidence shows the publication of this statement was privileged; and since no proof of malice was made, its motion for directed verdict should have been sustained on that ground.

■ Based upon public policy the law recognizes certain communications to be privileged, and, as such, not within the rules imposing liability for defamation. A privileged communication is one which would be defamatory except for the occasion on which or the circumstances under which it is made. Privileged communications are divided into two general classes: 1) those which have an absolute privilege and 2) those that bear a qualified or conditional privilege. 50 Am.Jur.2d, Libel and Slander, Sec. 192, p. 695.

■ Communications which are absolutely privileged are confined within narrow limits to cases in which the public service or the administration of justice requires complete immunity from accountability. Examples are the proceedings of legislative bodies and courts. Pulliam v. Bond, supra, 406 S.W.2d 635, 640[1, 2]. In such cases there is no liability even though made maliciously. This is for the reason that in certain matters and on certain occasions it is to the public interest that those participating be allowed to speak fully and freely without being brought to account for injuring someone's reputation. Laun v. Union Electric Co. of Missouri, 350 Mo. 572, 166 S.W.2d 1065, 1068[1], 144 A.L.R. 622. We do not have here a situation that falls within the narrow confines of absolute privilege. The published arti-

cle of plaintiff's arrest is not a report of a judicial or legislative proceeding, nor of those other special matters which are recognized as having absolute privilege. Neither may we consider it a defamation of a public officer or figure within the meaning of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, reh. den. 389 U.S. 889, 88 S.Ct. 11, 19 L.Ed. 2d 197, 198; Greenbelt Coop. Publishing Association, Inc. v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6; Skain v. Weldon, Mo., 422 S.W.2d 271; and Rowden v. Amick, Mo.App., 446 S.W.2d 849. We therefore pass on to the area of qualified or conditional privilege.

■ A communication is qualifiedly or conditionally privileged where circumstances exist or are reasonably believed by the communicator or publisher to exist in which he has an interest and which casts on him a duty to communicate the alleged defamatory matter to another person or persons having a corresponding interest or duty. This encompasses a class of cases (as for example, the communication of reasons for dismissal from service), which is discussed in Manning v. McAllister, Mo.App., 454 S.W.2d 597. Another class which is also conditionally privileged is that where the person occupies such a position or is so situated that it becomes right in the interest of society that he should tell third persons certain facts, which he in good faith proceeds to do. In the absence of malice, such a communication is qualifiedly privileged even though it may infer that which is not true and notwithstanding that it contains a charge of crime. In this last category fall cases like the one which we are here called to pass on. Our courts adhere to the rule that the actions and activities of police officers, including the details and reasons for an arrest of a person, are qualifiedly privileged. A report thereof must be fair and accurate and if the publisher summarizes or abridges, or undertakes to state additional facts based

upon its own investigation the publication of such additional facts is not privileged. Moritz v. Kansas City Star Co., 364 Mo. 32, 258 S.W.2d 583, 585[1–7].

In *Moritz,* an attorney brought a libel action against a newspaper publisher for reporting that the attorney was soliciting business at the scene of an accident. Moritz, a lawyer, had been working in his yard in old clothes. He heard a crash between a streetcar and an automobile, looked and saw that his neighbor, who had been a passenger on the streetcar, was lying on the ground. Moritz went to the scene and, according to his version of the facts, gave his name to a streetcar motorman. When the motorman insisted that he sign his name on a card, Moritz refused and told the motorman he was a lawyer. The motorman then turned to a police officer and asked him to get that lawyer away from there. Moritz related the officer grabbed him by the arm and placed him in a police car and charged him with interfering with an officer. The news article about the incident not only reported the arrest but also inferred that Moritz was soliciting business at the scene. The officer testified at trial he did not know Moritz was a lawyer. He did not make the arrest because Moritz was soliciting business but because he was interfering with the officers in their work, a charge from which Moritz was later exonerated. Since there was a dispute of the facts, the court held that the case should be submitted to a jury. The court found the article contained not only an account of the arrest, the details of the incident and the reasons for the arrest, but also a charge of soliciting business, which was libelous per se, and this last sustained the cause of action.

■ The facts in *Moritz* are different than those in the case before us. Here the newspaper account recited the raid on plaintiff's house, his possession of jewelry and his arrest, suspected of burglary and receiving stolen goods. All of these matters were admitted as true by plaintiff. Plaintiff had been engaged part time in the business of buying and selling watches, jewelry, junk gold, silver and other merchandise. He admitted that he had been arrested before, possibly as many as twenty times. He had been convicted three times—grand larceny, buying stolen goods from an interstate shipment, and burglary. The policeman who assisted in the raid testified he was of the opinion, or believed, that some of the jewelry was taken in a burglary at the Mueller jewelry store. When Mueller failed to identify any of the items, this opinion of the officer was proved to be incorrect. But it was still a reason given by the police for making the arrest. The police gave this statement to the reporter who accepted it as one of the reasons for the arrest and published it in the newspaper. Under the circumstances of the case, considering the arrest of plaintiff at night while he was showing items of jewelry to other persons, his prior record, the nature of his part-time business, it would appear that the opinion of the police was a good faith reason given by them for his arrest and hence within the protection of conditional privilege. Publication of this reason which gave no indication in itself of malice and which was itself free of malice in content and motive continued to carry the conditional privilege and thus protected the publisher.

Cases which extend the rule of qualified or conditional privilege to reasons for action by public officers in Missouri are Tilles v. Pulitzer Pub. Co., 241 Mo. 609, 145 S.W. 1143, and People's United States Bank v. Goodwin, 148 Mo.App. 364, 128 S.W. 220. In *Tilles* the attorney general was quoted in the news article as saying the men, who were proprietors of a race track, were engaged in the commission of a felony. The court found a qualified privilege in the publication of the article containing the opinion of the attorney general. There had been an official investigation. There was threatened action. The court determined that the public had a right to know the reason for the threatened action. The reason given was therefore qualifiedly privileged. The second case, People's

United States Bank v. Goodwin, supra, considered the application of conditional privilege to a publication of the reason for the Postmaster General issuing a fraud order against a bank. The newspaper article recited that the fraud order was issued for the reason that sales of stock had been made and deposits induced upon false representations and promises, and that funds were being misapplied. This court decided that a fair publication, made as a matter of news of public concern, and without actual malice, of what such an officer did officially and the reasons he gave for his acts, should be privileged.

As previously indicated, our supreme court has determined the rule in *Tilles* and *People's Bank* to be applicable to actions and activities of police officers. Moritz v. Kansas City Star Co., supra. Malice, although pleaded by plaintiff in his petition, was not shown in the evidence. The newspaper account of the facts seems to be fair and accurate. The expression of the police gave a reason for their action in arresting plaintiff. It, therefore, bears the same conditional privilege as the newspaper account of the arrest. And, since no actual malice was proven, the case as to this portion of the article should not have been submitted to the jury.

The court below should have sustained defendant's motion for directed verdict at the conclusion of the evidence. Therefore, the order setting aside the judgment is sustained. The order granting a new trial is reversed. The case is remanded with instructions to enter judgment for defendant in accordance with its motion for directed verdict filed at the close of the evidence.

PER CURIAM.

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, the order setting aside the judgment is sustained. The order granting a new trial is reversed. The case is remanded with instructions to enter judgment for defendant in accordance with its motion

for directed verdict filed at the close of the evidence.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.