[No. 7779–1–I.   Division One.   September 29, 1980.]

ALBERT MARK, *Appellant,* v. FISHER'S BLEND
STATION, *Respondent.*

*Albert Mark,* pro se, *Snyder & Middleton,* and *Thomas Middleton,* for appellant.

*Williams, Lanza, Kastner & Gibb* and *Joseph Lanza,* for respondent.

RINGOLD, J.—Albert Mark appeals the entry of summary judgment in favor of defendant, Fisher's Blend Station, Inc., in his action for negligent defamation.

On December 30, 1976, KOMO–TV, operated by Fisher's Blend Station, Inc., broadcast several reports about the filing of multiple counts of grand larceny, forgery and tampering with evidence in a Medicaid fraud case against the operator of two West Seattle pharmacies, Albert Mark. On May 19, 1977, KOMO–TV broadcast a report about complaints by defense counsel that the prosecutor was denying Mark a fair trial by overpublicizing the case. On May 27, 1977, KOMO–TV broadcast a report about the progress of the trial. A broadcast on June 7, 1977, concerned the jury's return of guilty verdicts on one count of grand larceny and five counts of first degree forgery. On September 23, 1977, KOMO–TV broadcast two reports about Mark's sentencing.

Mark subsequently brought an action for defamation based on statements made in all of these broadcasts except the one on June 7, 1977. In essence, he alleged that KOMO–TV grossly exaggerated the amount of money involved, distorted the alleged means of committing the offenses, accused him of a motive for cheating the State and accused him of destroying evidence. Mark's complaint and amended complaint alleged negligent defamation and did not allege malice.

Mark first alleges defamation in the statement of December 30, 1976, that the prosecutor's office called this "the largest case of Medicaide [sic] fraud by a pharmacy in memory." He also alleges defamation in the republication of this statement in the May 19, 1977, broadcast which stated that "Seattle TV stations called it the biggest Medicaide [sic] fraud case in memory involving drugs." This statement has its origin in a comment made by the chief of the prosecutor's fraud division, who was filmed making this statement in a telecast on December 30 by KOMO–TV. Mark submitted evidence of the possible falsity of this claim in the form of a Seattle Times report of a similar case in Chicago involving millions of dollars. The date of the article was September 26, 1976.

Mark next alleges defamation in the broadcast of December 30 which reported figures of $300,000 and

$350,000 as the amount of false claims for Medicaid prescriptions. He alleges the republication of this statement on May 19 in a broadcast which reported that "earlier stories had indicated that Mark may have cheated the State out of $200,000 in fraudulent billings." He also alleges defamation in another portion of the December 30 broadcast which reported that the chief prosecutor in the fraud division had filed an affidavit stating that Mark had made about $100,000 in phony claims in each of 3 years. One source of the dollar figures was the affidavit of probable cause filed with the criminal information and given to the media by the prosecutor's office. There was a factual error in the broadcast. The court documents reflect that the dollar figure was "over $200,000 in fraud billing for the 2 2/3 years" (not $300,000, $350,000 nor $100,000 per year).

Mark next alleges defamation in the December 30 broadcast that "investigators say that sixty five per cent (65%) of the medicaid [sic] prescriptions billed to the state in an audit sample were invalid." The affidavit of probable cause reflects a 63 percent invalid figure. It also mentions the need to verify the invalidity rate by using a larger sample. KOMO–TV reported that there were efforts to verify the survey.

Mark next alleges defamation in the December 30 broadcast that investigators learned the records were missing when they returned to the pharmacy to verify their survey. This information is found in the prosecutor's affidavit of probable cause.

Mark next alleges defamation in the December 30 broadcast that the chief prosecutor in the fraud division filed an affidavit stating that Mark forged prescriptions for nonexistent patients and added drugs to valid prescriptions. The affidavit of probable cause includes statements by the chief prosecutor in the fraud division that several prescriptions were never authorized by any doctor and that several Medicaid recipients did not receive all the prescriptions claimed by Mark. It does not state that Mark forged prescriptions for patients who did not exist.

The final defamation alleged in the broadcast of December 30 is its use of a background film depicting a large stack of dollars flying away.

Before preparing the December 30 broadcasts, KOMO–TV's reporter reviewed and relied upon the criminal information and the affidavit of probable cause filed with the court. He also relied on verbal communication received from representatives of the prosecutor's office.

Mark next alleges defamation in the broadcast of May 27, 1977, that reported Mark's willingness to fill prescriptions without knowing if the State would pay for them and then stating that this practice may have provided a motive to cheat elsewhere to make up for the losses. John Sandifer, a news reporter for KOMO–TV, testified in his deposition that this statement concerning Mark's possible motive was interpretive.

Mark's last claim of defamation concerns a broadcast report on September 23, 1977, that Mark had been sentenced for $200,000 in Medicaid fraud. It is disputed whether the $200,000 figure was used at sentencing. The loss actually proven at trial was $2,473.78. It was undisputed, however, that the State decided to prove only a small portion of the loss at trial and that the trial court's sentence included restitution in an amount to be determined in a subsequent audit.

Mark contends summary judgment was improper because the truth of the broadcasts is disputed and no qualified privilege applies to the contents of the affidavit of probable cause and the oral statements of prosecuting authorities. Mark also contends that any privilege was destroyed by distortion of the facts and rebroadcast of falsehoods without any reason to believe they were true.

■■ The disposition of this appeal is controlled by the decision in *Mark v. KING Broadcasting Co.*, 27 Wn. App. 344, 618 P.2d 512 (1980), and cases cited therein. Under the holding of that case, KOMO–TV's use of the contents of the affidavit of probable cause was qualifiedly privileged. While our summary of the broadcasts highlights the factual

errors, our review of the record persuades us that there is no genuine issue as to the broadcasts' substantial accuracy. The falsehoods alleged by Mark were so insignificant that they could not have increased the harm over that resulting from perfectly accurate reports of the affidavit's contents. *See Turnbull v. Herald Co.*, 459 S.W.2d 516 (Mo. App. 1970); *McCracken v. Evening News Ass'n*, 3 Mich. App. 32, 141 N.W.2d 694 (1966). This is not a case of true statements interspersed throughout a false report. It is a case of substantially accurate reporting of the contents of the affidavit of probable cause. Where a few inaccurate statements may have occurred, they were manifestly harmless. *Luna de la Peunte v. Seattle Times Co.*, 186 Wash 618, 59 P.2d 753, 105 A.L.R. 932 (1936). We, therefore, need not decide whether reliance on oral statements of prosecuting authorities is privileged.

To the extent Mark alleges falsehoods in the affidavits (rather than inaccurate summaries by KOMO–TV), he cannot prevail because he alleges no facts tending to show abuse of the privilege to report the document's contents.

There are no facts in the record tending to show fault by KOMO–TV in relying upon an affidavit filed in court, open to the public, and distributed to the news media. KOMO–TV acted reasonably by continuing to rely on the affidavit's $200,000 figure after the criminal trial even though only $2,473.78 was proven at trial. It was undisputed that only a small portion of the total dollar amount was introduced at trial. At sentencing, the trial court ordered an audit to determine the restitution actually owed by Mark.

There being no evidence of material falsehoods and no question of abuse of privilege, the trial court correctly granted summary judgment for the broadcaster.

Affirmed.

CALLOW, C.J., and DORE, J., concur.

Reconsideration denied October 29, 1980.

Review granted by Supreme Court January 29, 1981.