Commonwealth *v.* Shipherd et al., Appellants.

Argued November 20, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Thomas D. McBride,* with him *M. H. Goldstein* and *William K. Rhodes,* for appellants.

*William R. Toal,* First Assistant District Attorney, with him *C. Wm. Kraft, Jr.,* District Attorney, for appellee.

OPINION BY RHODES, J., March 5, 1945:

Defendants were indicted for libel and conspiracy to

commit criminal libel.[1] They entered pleas of not guilty. The jury found the defendants guilty on both charges. Their motions in arrest of judgment and for a new trial were refused. Sentences were imposed on each of the defendants. They have appealed.

Appellants do not question the action of the court below in refusing their motions in arrest of judgment.

Appellants were members of Local No. 2 of the Industrial Union of Marine and Shipbuilding Workers of America, a labor union affiliated with the C. I. O. Likewise, prior to April 11, 1944, one Lewis A. Campbell was also a member of and affiliated with this organization, which is composed entirely of employees of the Sun Shipbuilding and Dry Dock Company, Chester, Pa. At various times appellants and Campbell held offices in the local. As a result of the alleged activities of Campbell, appellants presented certain formal charges in writing against Campbell to the executive board of the local at a meeting held on February 8, 1944. The charges set forth acts of Campbell, which it was alleged had brought the local into discredit and constituted an attempt to disrupt the union. The charges were prepared and filed with the executive board in accordance with the procedure outlined in the by-laws of the local, and following that procedure a trial board was appointed and hearings held in connection with the charges.[2] Testi-

---

[1] Section 412 of the Act of June 24, 1939, P. L. 872, 18 PS 4412, provides as follows: "Whoever writes, prints, publishes or exhibits any malicious or defamatory libel, tending either to blacken the memory of one who is dead, or the reputation of one who is alive, thereby exposing him to public hatred, contempt or ridicule, is guilty of libel, a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment not exceeding one (1) year, or both."

[2] The by-laws provided as follows:

"Article III. Section 1. Executive Board: (a) The Executive Board shall be the administrative body of the Local and shall make such recommendations, to the membership meeting as may

mony was presented in substantiation of the charges, and Campbell's witnesses were heard in defense. The trial board, after hearing the evidence on both sides, found Campbell guilty and recommended that he be suspended from the local. This finding and recommendation were transmitted to the next general membership meeting of the local following the close of the testimony as provided by the by-laws. The action of the trial board was ratified. This action of the local was then communicated to the Sun Shipbuilding and Dry Dock Company which had a contract with the union containing a clause providing that maintenance of union membership would be a prerequisite to continued employment. The union request to discharge Campbell was referred to an arbitrator, as provided in the contract; and the company complied with the request after the arbi-

---

seem necessary for the efficient administration of the affairs of the Local."

"Article IV. Section 1. Eligibility for Membership: All persons employed in the shipbuilding industry and allied trades are eligible to membership regardless of race, creed, color, national origin, or political belief, but the right is reserved to exclude or expel any member after he has been given a fair trial, as prescribed in these By-laws."

"Article V. Section 1. Charges: (a) Any member of the Local or any National Officer or his duly accredited representative may prefer charges against any member in connection with violation of the Constitution or these By-laws; acts which have brought the Local into discredit or are injuring the character or reputation of the Union; attempted disruption of the Union; or incompetency and/or corruption in official capacity.

"(b) All charges preferred against a member or an officer of the Local shall be filed in writing with the Executive Board. The Executive Board, or a Trial Board, shall hold hearings as soon as possible. The accused member shall receive a copy of the charges a week before the hearing and shall be given an opportunity to present his defense and witnesses. The findings, recommendations, and decisions shall be presented in writing at the membership meeting following the hearing and the action of said meeting as provided in the Constitution shall be final, unless appealed."

trator had ruled that Campbell must be discharged.

While the charges against Campbell were pending before, and undetermined by, the trial board,[3] Campbell had issued a warrant of arrest charging appellants with libel and conspiracy, and in due course they were indicted accordingly. The indictment for libel rests upon the charges which were preferred by appellants against Campbell, and the indictment for conspiracy charges conspiracy to commit libel by preferring such charges.

Appellants have presented 16 assignments of error. On the view we have taken of the charge of the court, the judgments must be reversed and a new trial granted. Little, if anything, need be said beyond referring to the charge of the court.

The charges which appellants made apparently related to the proper conduct of the union, and the executive board of the local had jurisdiction of such charges under the by-laws. The charges were brought in conformity with the union regulations. The trial was held and disposition of the charges made in accordance with the organization by-laws. The jurisdiction conferred upon the executive board was voluntary; and every member of the union contracted to be bound by the decisions rendered in conformity with the by-law requirements. See Article 4, section 1 of the by-laws. It would seem that this jurisdiction, which is thus voluntarily conferred, is within its own limited sphere no different from the principle of the involuntary jurisdiction of courts of law. Otherwise, as counsel for appellants points out, if the local here involved had deprived Campbell of his membership without written charges and without affording him a hearing in violation of their by-laws, the officers and members would have been brought into a

---

[3] "Article V. ...... Section 2. Appeals: ...... (d) No member or officer against whom charges have been preferred shall take action in any court, without first having exhausted the appeals provided by these By-Laws and Constitution."

court of equity and compelled to give him a hearing after proper presentation of written charges; but if thereafter the written charges were preferred and filed the parties could be brought again into court on a charge of criminal libel. See *O'Neill et al. v. United Ass'n of Journeymen Plumbers and Steam-Fitters of United States and Canada et al.*, 348 Pa. 531, 36 A. 2d 325.

The trial judge charged the jury that the charges presented by appellants against Campbell to the local were qualifiedly privileged, but that the privilege attendant upon the preferring of the charges by appellants would be defeated by showing malice.

Appellants' principal contention is that the rule applicable to the present case is set forth in *M'Millan v. Birch*, 1 Binney 178. In that case Birch brought an action of slander against M'Millan for calling him a "liar, a drunkard, and a preacher of the devil." Both were ministers of the Presbyterian church. The language was used during the trial of charges preferred by Birch against M'Millan before a church Presbytery. Chief Justice TILGHMAN, who wrote the opinion for the Supreme Court, held that such words spoken of a clergyman were actionable, but that where the action was based upon the use during the trial held before the Presbytery no action could be maintained provided the words used were relevant to the inquiry. The Supreme Court said (page 186) : "But if any man should abuse this privilege, and under pretence of pleading his cause, wander designedly from the point in question, and maliciously heap slander upon his adversary, I will not say that he is not responsible in an action at law. ......
The objection in the case before us is, that Presbyteries and General Assemblies are not courts of justice. Certainly they are not; and depositions taken before them are no evidence in courts of justice, because they have no authority to administer an oath; and a person swearing falsely could not be indicted for perjury. But although they are not courts of justice, they are bodies

enjoying certain rights, established by long custom, and not forbidden by any law. They can inflict no temporal punishment; and their jurisdiction is founded on the consent of the members of the church. No extensive church can preserve decency, good order, or purity of manners, without discipline. ...... A jurisdiction of this kind, exercised only over those who consent to it, certainly must be productive of good effects; and it appears to me that the persons thus consenting and pleading their causes either in a course of complaint or defence, fall within the principle applied to those who are speaking in courts of justice. If they conduct themselves in a decent manner, the occasion of speaking makes it improper that the law should imply malice. I repeat the remark made before, that if under a pretence of pleading a cause before a Presbytery, one should designedly and maliciously wander from the point and slander his opponent, he would be responsible for his conduct in a court of justice."

The position of the Commonwealth is that the *M'Millan* case is not applicable to labor unions although applicable to church trials. This was likewise the position of the court below in its opinion refusing a new trial when it said, "we feel that such a rule should not be extended to trials in clubs, lodges, fraternal organizations or labor unions."

We are unable to discern the distinction thus made, nor do we find that Chief Justice TILGHMAN rested his decision upon an exaggerated respect for ecclesiastical law. In the present case and in the *M'Millan* case jurisdiction was voluntarily conferred as the result of membership. The by-laws of the local provided for the machinery for the adjudication of such disputes, and for the maintenance of proper discipline through methods prescribed and agreed to by the members. A labor union is an organization of employees, and its classical purpose—furthering the interest of the workers with respect to higher wages, improved labor conditions, better-

ing hours of labor, etc.—is recognized by law. The peaceful disposition of matters relating to its internal affairs is essential for the attainment of its objectives and for the retention of public confidence.

As we are of the opinion that the *M'Millan* case sets forth the principles applicable to the instant case, the trial judge should have charged the jury that the charges against Campbell, if made, filed, and presented in accordance with the by-laws of the local, could not be made the basis of an action unless they were both irrelevant to the inquiry and malicious. We may add that it is a primary duty of the trial judge—a duty that must never be ignored—in charging a jury to clarify the issues so that the jury may comprehend the questions they are to decide. *Sears v. Birbeck et ux.,* 321 Pa. 375, 383, 184 A. 6.

Judgments are reversed, and a new trial is granted.