Paul GINSBURG, Plaintiff-Appellant,

v.

John D. BLACK et al.,[1] Defendants-Appellees.

No. 11595.

United States Court of Appeals
Seventh Circuit.

Nov. 1, 1956.

Rehearing Denied Nov. 26, 1956.

[1]. In addition to Black, the following were sued: John C. Slade, Guy Allen Gladson, Edward G. Ince, Bryce L. Hamilton, Reuben A. Borsch, Douglas C. Moir, James D. Head, Gerard E. Grashorn, George W. Ott, Grier D. Patterson, Walter A. Wade, Paul H. Moore, Charles J. Calderini, George B. Christensen, Thomas I. Underwood, Thomas A. Reynolds, Frank B. Gilmer, Robert Mc-Dougal, Jr., Albert W. Potts and William C. Mulligan.

Paul Ginsburg, Pittsburgh, Pa., for appellant.

George B. Christensen, R. Lawrence Storms, Chicago, Ill., for appellees, Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel.

Thomas A. Reynolds, Chicago, Ill., pro se and as attorney for other appellees.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

From the district court's summary judgment in favor of defendants entered in plaintiff's action to recover damages for libel, plaintiff appeals.

All of the parties to this suit are lawyers. Plaintiff and defendants are members of the American Bar Association, a voluntary association.

The complaint charges, *inter alia:*

"8th. On or about June 15, 1953, defendants did, by themselves, their attorneys, agents, servants and employees, cause to be filed and published at Illinois, Kentucky, New York, Vermont, Tennessee, Utah, Colorado, Pennsylvania, Massachusetts and at other places throughout the United States, a 'memorandum' in opposition to appeal of plaintiff from the refusal of the Committee on Professional Ethics of the American Bar Association to entertain a complaint filed before the said Committee by plaintiff, in which said publication, widely publicized as aforesaid and particularly throughout the legal profession, defendants did maliciously, unjustifiably and falsely print and distribute the following defamatory matter concerning the plaintiff:"[2]

"9th. On or about July 15, 1953, defendants did file and publish at the places and before the Committee and Association as aforesaid, a document entitled 'Response to Motion to Strike Memoranda and to Delete and Suppress Certain Matter', which said Document contained the following defamatory matters concerning plaintiff:"[3]

2. The alleged defamatory matter evidently refers to some prior court actions and is detailed in the complaint as follows:
"At page 11 of the said publication—
"'The petition was made up of truths, half truths and plain falsehoods of the type usually filed by persons only interested in making trouble in the hope of personal gain.'
"At page 12 thereof—
"'* * * after demonstrating the outrageous, unwarranted character of Ginsburg's petition we said: "Under such circumstances, the attempt of this interloper to get himself into a position where he might hope to be bought off should not be assisted by any Court."'
"At page 13—
"'There can be no possible question that he was an "interloper" meddling with a matter in which he had no slightest interest, * * *'
"At page 15—
"'This is not the only time Ginsburg has tried desperately to inject himself into litigation conducted by able lawyers, * * *'
"At page 16—

"'This litigation terminated with an injunctive order issued by Judge John J. Kennedy against both Ginsburgs * * *.'"

3. "At page 2, the following—
"'* * * when he thinks his own best interests are served, he does not consider himself bound by any record, or even by any opinion or judgment of a court.'
"At page 3—
"'* * * Ginsburg appears to believe that that litigation was legitimate and not discreditable to him, but the fact remains that no amount of chlorophyll could destroy the malodorous character of Ginsburg's performance therein.'
"At page 4—
"'Ginsburg's response (entirely outside any record)—Appendix A—is that the lawyers directly involved in the case handled it badly, failed to introduce some important paper, and that now the time is ripe for him to make another attempt to intervene or start new litigation.'
"At page 5—
"'The fact remains that all of that libel litigation was unsuccessful and discredita-

The complaint charges that these publications were false, malicious and published with intent and purpose of injuring him in his professional reputation and standing.

By their answer, defendants, as to the matters set forth in paragraphs 8th and 9th of the complaint, although admitting the filings alleged, deny that they or their attorneys, agents, servants or employees published, within the meaning of the law of libel, any memorandum or document whatsoever.

By amendment to their answer, defendants stated that

"* * * on April 15, 1953 these defendants * * * received notice from the Committee on Hearings of the American Bar Association of the complaint plaintiff had lodged against defendants and of his appeal of the ruling of the Committee on Ethics and Grievances of the American Bar Association. Said notice contained the following information:

" 'The Committee on Hearings will dispose of this appeal in substantially this manner:

" '1. Let the appellant supply to its Chairman by 15 May 1953 sixty (60) mimeographed or printed records of:

" 'a. Complaint in each case to the A.B.A. Professional Ethics Committee;

" 'b. Copy of letter from the Chairman of the Professional Ethics Committee to the complainant of 20 October 1952;

" 'c. All (not part) of the balance of the correspondence between the complainant and the Chairman of the Committee on Professional Ethics if the complainant elects so to do;

" 'd. Such arguments and citations of authorities as the appellant may desire.

" '2. The Chairman will distribute such memoranda to each of the members of the Committee on Hearings, to the members of the Committee on Professional Ethics and to each of the persons, twenty-nine (29) members of the Association, complained against.

" '3. The respondents, individually, collectively, or by such groups as they may elect, by 15 June 1953 may supply sixty (60) copies of any answer and supporting material they desire, either printed or mimeographed.

" '4. The Professional Ethics Committee may supply by 15 July 1953 sixty (60) copies, either mimeographed or printed, of any material it desires in reply to any of the above.

" '5. The Chairman will distribute to the complainant, the respondents and the members of the Committee on Professional Ethics one (1) copy each of the foregoing. * * *' "

In answer thereto, plaintiff admitted that defendants received said notice.

Defendants thereafter made a motion for summary judgment in their favor, which was granted by the district court. Plaintiff's appeal followed.

We shall affirm the judgment below. We base our action upon grounds different from those relied upon by the district court. This we have a right to do. Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 150 F.2d 997, 1000; Securities and Exchange Comm. v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626.

In this court, plaintiff, arguing orally pro se, stated substantially as follows: defendants caused to be prepared a memorandum in opposition to the appeal of plaintiff before the Committee on Hearings, together with a number of copies thereof, and filed same with the chairman

ble by Ginsburg, and the Court of Common Pleas of Allegheny County, Penn-

sylvania, did enjoin Ginsburg from commencing any more such suits.' "

of that committee; that, in accordance with the rules of procedure of the American Bar Association, these copies were sent out by the committee chairman to each of the members, who were in the states where the publication allegedly occurred.

■ An essential ingredient of any definition of "libel" is a publication by the author or by his authority, 53 C.J.S., Libel and Slander, § 149, p. 232. The uncontroverted facts in this record reveal the absence from plaintiff's case of this ingredient.

Plaintiff, in attempting to charge defendants with a publication, alleges that they, by themselves, their attorneys, agents, servants, and employees, caused to be filed and published at [sic] Illinois, Kentucky, New York, Vermont, Tennessee, Utah, Colorado, Pennsylvania, Massachusetts and at other places throughout the United States, the alleged libelous writing, "in which said publication, widely publicized as aforesaid and particularly throughout the legal profession, defendants did print and distribute the alleged defamatory matter". It is clear that the word "filed" relates only to the lodging of alleged defamatory matter with someone. That person is not specifically identified by the complaint. However, plaintiff's statement to this court during oral argument has made it clear that the filing was with the chairman of the Committee on Hearings of the American Bar Association. This filing necessarily occurred at one place and, therefore, the language "at Illinois, Kentucky" etc. could not refer to the filing and must refer only to the word "published" immediately preceding that language. The subsequent langauge of the 8th paragraph, charging that defendants did *print and*

*distribute* the alleged defamatory matter, necessarily uses those verbs to describe the means of publication immediately theretofore referred to. The question then arises as to whether plaintiff has charged a publication by the defendants. Having distinctly charged that defendants "by themselves, their attorneys, agents, servants and employees" (whom we shall, for brevity, sometimes herein refer to as "their agents") "did cause to be filed" (with the committee chairman), plaintiff now contends that defendants are liable to plaintiff on the ground that they or their agents published the alleged libelous matter in the various states mentioned.

Plaintiff does not contend that the mere filing of the memorandum with the chairman of the committee constituted a publication of its contents. He has cited no case so holding as a matter of law. There is no showing that, as a matter of fact, documents filed with a committee chairman of the bar association are records which may be read by any persons other than those designated to receive the documents through the sole means provided by the rules of the association, i. e., distribution by the chairman.

■ The method of actual publication of the alleged libelous matter is not in dispute. Publication was accomplished by the chairman of the Committee on Hearings of the American Bar Association and was a part of the processes of that association to which plaintiff had resorted when he filed a complaint and later appealed from the unfavorable action of a committee thereon.[4] Moreover, quite aside from the association's rules, defendants cannot be held liable on the theory that the committee chairman was their agent in distributing the filed,

---

4. On or about October 20, 1952, the chairman of the Committee on Professional Ethics advised plaintiff that with the exception of one member of the committee who felt that he was disqualified to sit in the matter, "the other members of this committee are all agreed that we should not entertain your complaint. The same public policy that required a dismissal of

your libel action by the Circuit Court of Appeals because the statements were 'vital, material and pertinent to the issue raised' also leads to a dismissal of the charge before the committee that the statements complained of were a violation of Canon 17."

The Court of Appeals decision is Ginsburg v. Black, 7 Cir., 192 F.2d 823.

printed copies of the memorandum to the members of the committee, including himself. Such agency is negated by the undisputed facts that the chairman was not under the control or direction of the defendants, he was not paid by them, he was not hired by them, they had no right to discharge him, and he did not purport to act for defendants. He was acting only as an agent of the bar association. It might, however, be logically contended that, if he was also acting as agent for anyone other than the bar association, in whose behalf he purported to act, that other person was the plaintiff, who voluntarily approved in advance the authorized method of distribution by the chairman when he invoked the established machinery of the bar association to procure discipline of defendants.

In fact, by his adoption in advance of this method of distribution by the chairman, which plaintiff claims constituted publication in various states, plaintiff caused, consented to and authorized such publication, and, therefore, for that additional reason he cannot recover for any injuries sustained thereby, 53 C.J.S., Libel and Slander, § 80, p. 129.

Moreover, there is no allegation that any member of the committee, including the chairman himself, ever read the contents of the memorandum prior to distribution, which was made, not by the defendants or any of their agents, but by the chairman himself. The purport of the rules of procedure indicates that the chairman had no occasion to examine the contents of the memorandum until this distribution was made and he, like the other committee members, was required to prepare himself for a consideration on the subject matter thereof when plaintiff filed a motion to strike.

What we have said in regard to paragraph 8th of the complaint is also applicable to paragraph 9th thereof, supra, which incorporates by reference the allegations of paragraph 8th in regard to filing and publishing, insofar as they pertain to defendants' response to plaintiff's motion to strike the memorandum, etc.

For the reasons herein set forth, the judgment of the district court is affirmed.

Judgment affirmed.

FINNEGAN, Circuit Judge, concurs in the result reached.