**Richard P. SKAIN, Appellant,**

v.

**William WELDON et al., Respondents.**

No. 52550.

Supreme Court of Missouri,
Division No. 2.

Dec. 11, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 8, 1968.

James E. Conway, Boonville, Robert D. Kingsland, Jefferson City, Cullen Coil, Jefferson City, for appellant, Carson, English, Monaco & Coil, Jefferson City, of counsel.

Lon Hocker, St. Louis, for respondents.

BARRETT, Commissioner.

In this libel action in which Dr. Richard P. Skain, a dentist, and in September 1964 also a member of the City Council of Jefferson City, sought $50,000.00 actual and

$200,000.00 exemplary damages, a jury returned a verdict for the defendants and he has appealed. The sole assignment of error by Dr. Skain is that instructions 7 and 8 are manifestly erroneous and prejudicial and that therefore he is entitled to a new trial. The defendants are News Tribune Company, publisher of *The Sunday News and Tribune* newspaper, and Jefferson Television Company, then the corporate owner of television station KRCG, and Mr. William H. Weldon, then president of both corporate defendants and, admittedly, the author of the editorial complained of in this action. The controversy, the publishing of the editorial and this suit, arose out of Dean Lupkey's attempt in September 1964 to secure a cable television franchise from Jefferson City and is a companion case to Lupkey v. Weldon, Mo., 419 S.W.2d 91. The fundamental difference in the two cases is that in Mr. Lupkey's case reliance was on the accompanying news article as well as upon the editorial in the Sunday, September 20, 1964, issue of "The Sunday News and Tribune" and basically the defense in that suit was truth while here the defenses are (1) "that the editorial condemnation could not be reasonably considered to refer to the plaintiff" and (2) that there was no proof of actual malice, Dr. Skain being a public official, and therefore there was no right of recovery under the doctrine of New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. And for these latter reasons the respondents contend that plaintiff "failed to prove a case for relief" and that therefore any error in instructions is immaterial thus compelling, if the instructions are prejudicially erroneous, some consideration of the substantive law of libel and at least in part this cause upon its essential merits.

Given instructions 7 and 8, prepared and offered by the respondents, are as follows:

"Instruction No. 7.

"The Court instructs the jury that it is the right of the defendants to comment on matters of public interest, and this means the right to express opinions as to the acts of a public officer and to draw inferences as to his motives, whether such opinions or inferences are right or wrong, reasonable or unreasonable, provided they are made in good faith and based upon the truth."

"Instruction No. 8.

"And even if you find that any statement of fact, on which comment or inferences were based, was untrue, and derogatory of the plaintiff, yet plaintiff, being a public official, cannot recover any damages unless he proves that the statement was made with actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

There are no specifically applicable MAI pattern instructions but the appellant contends that as adaptations they not only violate the spirit and theory of MAI they plainly violate Civil Rule 70.01(e), V.A.M.R. "where there is no applicable MAI so that an instruction not in MAI must be given, then * * * such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." And in this connection the appellant suggests what he considers appropriate and proper adaptations of certain pattern instructions, for example MAI 28.09. There are numerous objections to these instructions but basically the appellant objects that they are "highly argumentative, the language was favorable to defendants and the instructions did not submit ultimate issues in the simple manner ultimate issues are submitted in Missouri Approved Instructions."

It is true that the subject matter of these instructions is not specifically covered by MAI, neither as the respondents suggest are they "an effort to 'improve' an MAI form" as was true in several of the cited cases.

Noting only briefly in this posture the respondents say that the instructions should be considered together, that it was only because of the plaintiff's position that it was made "impossible to cast these two instructions in the style typical of MAI" thus tacitly conceding it would seem that at least technically they do not measure up to MAI standards. They say, however, that "prejudicial effect is to be judicially determined" (Civil Rule 70.01(c) ) and that these instructions are not erroneous as a matter of law. And finally respondents urge that "what defendants submitted in instruction 7 was the defense of fair comment on actions by public officials, i. e., the rule of law promulgated in the Cook case;" (Cook v. Pulitzer Publishing Co., 241 Mo. 326, 145 S.W. 480). As a matter of fact instruction 7 is a single sentence lifted from the court's general discussion of the "right to comment" on the conduct of public officials (241 Mo. 1. c. 354, 145 S.W. 480) but "Instructions should not incorporate a discourse on general principles of law" (Taylor v. Commerce Trust Co., Mo.App., 319 S.W.2d 895, 897), or, as was said in Dill v. Dallas County Farmers' Exchange No. 177, Mo., 267 S.W.2d 677, 680, "mere abstract statements of law do not make proper verdict-directing instructions."

■ It is not necessary to further set forth and explore the contentions of the parties, it requires no analysis to demonstrate that instruction 7 is but an abstract, abstruse statement with no factual or other specific relevance to any determinative fact or issue directly involved in the trial of the merits of this cause. It is obviously argumentative—a lecturing type instruction— and it does not direct a verdict or require a jury finding, negatively or affirmatively, of any fact essential to the cause or of any issue involved in the cause. The instructions need not be further characterized, the parties are represented by able, experienced counsel and it is not necessary to indicate just what specific instructions should be given, it is sufficient in disposition of this appeal to say, as plainly indicated by the rationale of the very recent decisions of

Brown v. St. Louis Public Service Co., Mo., 421 S.W.2d 255 and Murphy v. Land, Mo., 420 S.W.2d 505 that instruction 7 or 8 is not within either the spirit or form of the philosophy and purpose of MAI and is manifestly and prejudicially erroneous and demands the granting of a new trial. While dealing with modifications or attempts to improve upon applicable pattern instructions consider also the rationale of Hunter v. Norton, Mo., 412 S.W.2d 163; Reckert v. Roco Petroleum Corporation, Mo., 411 S.W.2d 199; Motsinger v. Queen City Casket Co., Mo., 408 S.W.2d 857 and Leathem v. Longenecker, Mo., 405 S.W.2d 873, 876–877.

Upon the merits of the cause the respondents do not claim that the editorial is not libelous, even libelous per se, and necessarily they do not rely on truth as a defense as they did in the Lupkey case. Since there is no denial of its defamatory character only so much of the editorial is set out as is necessary to an understanding of the respondents' specific claims that plaintiff failed to make a case for relief in that, one, as a matter of law the publication complained of did not refer to plaintiff, and, two, no malice was proved within the meaning of New York Times Company v. Sullivan. Bearing in mind that Dr. Skain was a member of the city council, the libelous editorial contained this paragraph:

"*All nine councilmen* have been contacted by News-Tribune reporters and only Mr. Hawes, Mr. Kliegel and Mr. Debo have stated that they will oppose waiving of the rules, which would allow execution of the Lupkey scheme."

As a matter of fact the City Council of Jefferson City consists of ten councilmen and there were ten council members until Saturday afternoon, September 19, 1964, the day before the editorial was to appear. In truth Mr. Weldon had written the editorial and it was ready for front page printing in Sunday's paper when he learned of Councilman Jobe's death (notice of which together with his photograph also appeared on the

front page of the Sunday edition). Because of Mr. Jobe's death Mr. Weldon rewrote the editorial, of necessity changing references to the number of councilmen. On behalf of the respondents Mr. Weldon now claims that deducting from "all nine councilmen" the three named councilmen, Hawes, Debo and Kliegel, that "nine," or the remaining six did not include and refer to the appellant Dr. Skain although he was not specifically excluded and neither was he favorably mentioned which would have required the changing of the next sentence "These three councilmen have always been men of integrity." In support of their claim, as a matter of law it must be remembered, the respondents point to the lead and front page news report on the possibility of the council's voting on the proposal for cable TV without a hearing in which six named councilmen were listed as "predisposed" to waiving the rules (voting on granting the franchise on the night, Monday, the proposal was introduced). Kliegel, Debo and Hawes were listed as opposed to waiving the rule and as to the appellant the news report said "Dr. Richard P. Skain contended that he was neutral when contacted and completely unfamiliar with details." Because of these references it is said, reading the articles together, "that the editorial condemnation could not be reasonably considered to refer to the plaintiff."

In the first place, the trial court, upon objection of plaintiff, excluded the news report from the jury's consideration thereby limiting the jury to a consideration of the defamatory editorial and the oral testimony of Mr. Weldon on the one hand and Dr. Skain on the other hand. The admission or exclusion of the news article is not briefed and argued as a separate assignment of error and this is not to indicate whether the ruling of the court in this regard was error. The respondents now say, however, that the editorial upon which the action is founded was not the "entire publication" but that by dictionary definition and case law one meaning of "publication" is a "work published" and, as with certain contracts, can refer to and include several writings or publications. In support of these claims the respondents quote from Diener v. Star-Chronicle Publishing Co., 230 Mo. 613, 132 S.W. 1143, 33 L.R.A.,N.S., 216. But aside from the fact that the case was concerned with whether a demurrer should have been sustained to a petition, the quotation is not helpful to the contention here, to illustrate, the court said, "The whole article is its own best interpreter. So, words take color from the occasion of speaking them." (230 Mo. 1.c. 625, 132 S.W. 1. c. 1147.) Before these statements the court pointed out that it would determine the legal effect and force of a written instrument *"provided those terms are unambiguous* and are set forth in the petition (or here the editorial) as the foundation of the cause of action." Also apropos here the court said that libel "may lurk in a *double entente"* or be "sprung by insinuation." And finally the court said that the statement (in Julian v. Kansas City Star Co., 209 Mo. 35, 107 S.W. 496) that a former representative "did well in a legislative way" was "ambiguous, one natural sense of it being libelous."

■ It is true that Dr. Skain is not referred to by name in the editorial but neither are the other five councilmen and after Mr. Jobe's death the inclusion of Dr. Skain is a fair interpretation if "All nine councilmen have been contacted." The editorial exonerates three men "of integrity" by name—it goes to the pains of adding the mayor's name to this category and if it had been contemplated or intended that any of the other six councilmen were to be excluded from what the respondents call "editorial condemnation" it would have been a very simple matter to have added that councilman by name. At least in all these circumstances it may not be declared as a matter of law that the libelous editorial "could not be reasonably interpreted as saying anything defamatory about plaintiff," and that for this reason alone the action must fail. On this very factual point the case is to be compared to New York Times Company v. Sullivan where "the evidence was constitu-

tionally defective" because "it was incapable of supporting the jury's finding that the allegedly libelous statements were made 'of and concerning' respondent." (376 U.S. 1. c. 288, 84 S.Ct. 1. c. 730, 11 L.Ed.2d 1. c. 711.)

New York Times Company v. Sullivan held that "The constitutional guarantees (First and Fourteenth Amendments) require, * * * a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct *unless he proves that the statement was made with 'actual malice'* —that is, *with knowledge that it was false or with reckless disregard of whether it was false or not."* (376 U.S. 1. c. 279–280, 84 S. Ct. 1. c. 726, 11 L.Ed.2d 1. c. 706.) And that this is what the court set forth as a doctrine see also 95 A.L.R.2d 1450, 1453, and Pauling v. Globe-Democrat Publishing Co., 8 Cir., 362 F.2d 188, 192. The court in that case proceeded to review the evidence "to determine whether it could constitutionally support a judgment for respondent" and the court found that at most the proof showed "negligence" but not malice. It does not appear however that the Supreme Court's concept of "malice" differs from what "malice" has always meant in this jurisdiction: "What plaintiff had to show to prove express malice was that the publication, insofar as it was privileged, was not made in good faith to give a fair and impartial account of the charges, trial, and result which were matters of public concern and about which it was privileged to inform the public, but that *it was done with a wrong motive.* That is what malice is; *the presence of an improper motive.* * * * 'Proof of the falsity of the facts and knowledge of such falsity is proof of actual malice;' (Cook v. Pulitzer Publishing Co., 241 Mo. 326, loc. cit. 362, 145 S.W. 480, 492) because that does, unquestionably, show a wrong motive. Therefore, if defendant has added material facts on its own authority, which it knew to be false, it would thereby go outside of its privilege and malice would be inferred. *It is likewise a wrong motive,*

*which would tend to show malice, to state something as the truth without knowing whether it is true, recklessly, and without any reasonable attempt to find out about it or with complete disregard of other known facts."* (Emphasis supplied.) Warren v. Pulitzer Publishing Co., 336 Mo. 184, 210, 78 S.W.2d 404, 418.

As the respondents urge, Dr. Skain was a member of the city council, a public official, and so he must show actual malice. Nevertheless, New York Times Company v. Sullivan is so wholly unlike this case upon its essential facts that it applies here only abstractly and in theory. There the alleged libel of Sullivan, one of three city commissioners of public affairs of Montgomery City, Alabama, was contained in a paid advertisement describing the maltreatment of Negro students who were protesting segregation. While the libel was contained in a paid advertisement and thus the newspaper may have been motivated by the profit motive of selling advertising space, it had no personal interest in the subject matter of the "publication." In Warren v. Pulitzer Publishing Co., supra, the newspaper purported to report the facts of a church trial, the headline was "The Way Of A Minister With A Housemaid. She Couldn't Resist His Eyes." The respondents here, and particularly Mr. Weldon as president of both companies, are not in the position of either of the publishers in the Warren and Sullivan cases. The respondents here were not mere critics of the acts and conduct of a public figure and they were not simply reporting on the misconduct of a public official, they were the owners of a television franchise, KRCG and cable television in any form was not only a potential business competitor but as the editorial said "because we believe that pay television could eventually wipe out free television completely." And so the respondents, both family-owned corporations, had a direct financial interest in the subject matter of the editorial. It is in this background that malice in the publication is to be determined.

As the respondents suggest there are more than eight hundred words in the editorial and it need not be set out here. The respondents tacitly concede the defamatory character of the editorial if it applies to Dr. Skain. It has been determined that a jury could reasonably find that the editorial did apply to Dr. Skain which by comparison describes him as a man lacking in integrity, one of a group of "conspirators" bent on carrying out a "matter which smells to the skies." At one point the editorial says, "Of course there is a big payoff in this for Lupkey and we wonder what inducement he used on the Council members who have joined him." At the end this question is put: "Yet they (so-called public servants) appear willing to cast aside the city's interest and the public interest. We are sure all Jefferson City residents will join with us in asking 'Why?'"

 There are numerous other references with unsavory innuendoes if not direct charges of wrongdoing on the part of the six councilmen and there is no proof or even a claim that Dr. Skain was a party to or guilty of any of the matters charged in the "editorial condemnation." Mr. Weldon in testifying on this trial "exonerated" Dr. Skain "from being involved in any immorality" but once it is a permissible inference that the editorial in fact referred to and included him it could of course be found that the scurrilous, defamatory charges were made with knowledge of their falsity or if not in the language of the Sullivan opinion, in defining actual malice, "with reckless disregard of whether it was false or not." The transcript need not be examined in detail, this is sufficient to illustrate that, as with identity, actual malice was a question for the jury to resolve and could not be declared as a matter of law.

Because of the prejudicial error in the instructions the judgment is reversed and the cause remanded.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.