Merna MacBride **LAZIER**, Appellant,

v.

**PULITZER PUBLISHING COMPANY,**
Respondent.

No. 54853.

Supreme Court of Missouri,
Division No. 1.

May 10, 1971.

Motion for Rehearing or to Transfer to Court
En Banc Denied June 14, 1971.

Lucas & Murphy, Wilder Lucas, St. Louis, for appellant.

Evans & Hoemeke, Robert D. Evans, Michael P. Casey, St. Louis, for respondent.

SEILER, Presiding Judge.

Appeal from a jury verdict and judgment in favor of defendant in a libel action in which plaintiff sought $100,000 actual and $250,000 punitive damages based on two letters written by defendant's editors. Under the pleadings, defendant did not assert truth as an affirmative defense, but instead alleged qualified privilege, that the letters were written in good faith and in the belief that the matters therein stated were true. We reverse and remand.

Plaintiff, first as a free-lance writer and then as an employee, works for defendant corporation in preparing an illustrated article known as "My Favorite Dish", which appears in color in defendant's newspaper, the St. Louis Post Dispatch, in the Sunday Pictures supplement. The article features various persons' favorite dishes and shows the featured person preparing the dish. Several photographs, with explanatory notes, illustrate the dish in various stages of preparation, culminating in a photograph of the finished product, accompanied by an article describing the dish, with background information on its origin, a few facts about the person, and setting forth the recipe.

For approximately 12 years the feature appeared under plaintiff's by-line; in February 1965, defendant, without notice to plaintiff and without her consent, removed plaintiff's by-line as a first step in eliminating the feature itself. The management decision to eliminate "My Favorite Dish" resulted from advances in printing technology whereby use of color in the daily became economically feasible and a desire "not to have too much food in the Sunday paper", but instead to run a food feature in color in the daily paper, to be written by the food editor, a Dorothy Brainard; the management wanted to get the readers used to seeing her articles and "to eliminate any stories which might detract from her expertise in the eyes of our readership". Upon the dropping of "My Favorite Dish", plaintiff would be dismissed.

Several inquiries were received by defendant concerning the author of the feature after plaintiff's by-line had been dropped. Mrs. Bessie C. Nordman wrote the following letter:

> St. Louis, Missouri
> 5 February 1965
>
> The Editor of the St. Louis
>   post dispatch
> 1133 Franklin Ave.
> St. Louis, Missouri.
>
> Dear Sir:
>
> Several years ago I was featured in your Sunday Magazine Section, making my 'Favorite Dish'. It was done by Merna Lazier. The Meticulous care she took doing the supervising of the photographing and the arrangement impressed me very much, and I knew that any recipe coming from her would be just perfect. After that I bought the Sunday Post just to get her recipes. I have always been vitally interested in cooking and have saved them all.
>
> For the past weeks I do not see her name on the article and I was wondering if she is still doing them, and if not could I trust the party who might be. This is the only reason I purchase the Sunday Post and if Merna Lazier is not doing them, I might as well not take the Sunday paper.

Will you be so kind as to inform me just who is doing the articles. A stamped self addressed envelope is inclosed for your convenience,

<div style="margin-left:2em">

Respectfully,

/s/ Bessie C. Nordman
Bessie C. Nordman
1516 Engelholm Ave.
St. Louis 33, Mo.

</div>

Inc'l.
1 Envelope

Defendant's managing editor replied to the above letter as follows:

<div style="margin-left:2em">

February 22, 1965

</div>

Mrs. Bessie C. Nordman
1516 Engelholm Ave.
St. Louis 33, Missouri

Dear Mrs. Nordman:

The person who has written 'My Favorite Dish' for many years is still writing it. Your friend, Mrs. Lazier, never was the author. All she did, and still does, was to arrange the picture-taking and check the recipes.

<div style="margin-left:2em">

Sincerely,

/s/ Arthur R. Bertelson
Managing Editor

</div>

Mr. Bertelson testified one of his duties was to see that readers who had inquiries were satisfied, and to do so, and as a matter of courtesy, since a stamped addressed envelope was enclosed, he answered Mrs. Nordman's letter. He wanted to keep Mrs. Nordman taking the paper, and, as stated, had in mind getting the readers used to seeing the food articles published under the name of Mrs. Brainard and to bolster Mrs. Brainard's name.

He did not, before writing the letter, call Mrs. Lazier or otherwise check to set what she had done in the past about writing the articles personally. He acted on his knowledge, 29 years with the paper, based on experience as managing editor and then executive editor, that what Mrs. Lazier did was to be responsible for getting the recipes together, arranging for the photography and "transmitting these procedures" to the Picture staff for the feature; that she would prepare a preliminary draft of the way it should appear, but the article was actually written by one assistant to the editor or another, and that despite the by-line, Mrs. Lazier was not the author; that the practice in the newspaper business is to give a by-line to a person "who contributes elements to a story", whether or not he writes it.

As opposed to this, plaintiff's evidence was that in the preparation of the feature she would arrange an appointment with the person who was to be featured in "My Favorite Dish" and for the photographer to be at the person's home at the appointed time. Plaintiff arranged the settings for the photographs, supervised the taking of the photographs, and took notes on the detailed preparation of the dish and the recipe. Later, at her home, she wrote "underliners" (a short paragraph under a photograph which explains the photograph) and a paragraph or two describing the dish and its preparation and giving some information about the person involved. She then sent this draft to defendant's Pictures editor. The paper would then make a proof sheet. This was returned to her and she made any necessary corrections. Sometimes the newspaper would edit her work slightly or cut it down sufficiently to permit a larger advertisement on the page, but for the most part, she said, the paper made no changes in her copy. In fact, plaintiff produced several carbon copies she had retained of the material she sent to the paper where the proposed article was published verbatim or with little change, at most.

Plaintiff also testified that it required someone with some expert knowledge of recipes and cooking to write the articles and it could not be done by an editor's assistant who had no such knowledge; that it sometimes took her hours to compose an article.

Our examination of the exhibits, examples of "My Favorite Dish", from the pages

of the Sunday Pictures section, convinces us a jury could find that not just anyone could have prepared and written these articles. They refer to such things, as braising, basting, crimping, folding, leavening, glazing, congealing, breading, parboiling, sauteing, casings, shells, stock, meringue, oven temperatures, souffle, garnish, mixing procedures and other cooking terms and activities. No doubt an assistant to the editor would be able to take the material sent in by Mrs. Lazier and edit it by eliminating redundancies, restructuring a phrase here and there, repunctuating and correcting grammatical errors, if any, which is comparable to an assistant to the editor making similar changes in material sent in by the newspaper's expert on contract bridge, on how to bid and play a particular hand. The fact that the assistant does such editing does not mean he is the author or is qualfied to write the article in the first place, however.

Defendant received the following letter from Mrs. Helen H. Henderson:

> 1535 Grant Road
> Webster Groves, Missouri
> 22 February, 1965

Mr. William Brandsted
Editor, *Sunday Pictures*
St. Louis Post-Dispatch
St. Louis, Missouri

Dear Mr. Brandsted:

For the past eight and a half years I have been a diligent reader of the *Sunday Pictures* supplement to the *St. Louis Post-Dispatch*. It has provided a giant amount of clippings for my folders marked 'St. Louis' both at home and at the library where I worked

One of my required reading for the week has been Merna Lazar's 'Favorite Dish', therefore, it has greatly disturbed me that her feature no longer carries her byline. Mrs. Lazar is one of St. Louis' authorities on Gourmet Cooking. Her ability is recognized by professional chefs as well as amateur cooks, witness the overwhelming popularity of her cooking classes.

I feel very strongly that although the photography is generally excellent it is Mrs. Lazar's name that gives authority to the feature.

> Sincerely,
>
> /s/  Helen H. Henderson
> (Mrs. Beecher R. Henderson)

Defendant's editor of Sunday Pictures responded in a letter as follows:

> February 24, 1965

Mrs. Beecher R. Henderson
1535 Grant Road
Webster Groves 19, Mo.

Dear Mrs. Henderson:

A number of Mrs. Lazier's friends have written to us, protesting against the dropping of her byline from the Favorite Dish feature. We welcome their interest but continue to regard this as an internal matter of office policy.

By way of reassurance, may I add that omission of Mrs. Lazier's name has no bearing on the authenticity of the articles. As in the past, subjects are suggested by a number of persons and the writing continues to be done largely by my assistant.

> Sincerely,
>
> /s/  Wm. Bransted
> Wm. Bransted
> Editor, Sunday PICTURES

Mr. Bransted testified that Mrs. Lazier would send in her material to his assistant, who would look it over and prepare it for publication; that when he, Bransted, was the assistant to the Pictures editor, he would do the same thing himself, that it was necessary to make extensive revisions and changes; that in answering the inquiry made by Mrs. Henderson, he wanted to reassure her that while the by-line had been dropped, the feature was substantially the same as it had been. On cross-examination

Mr. Bransted conceded there were instances where the published material was the same, or virtually the same, as the copy submitted by Mrs. Lazier. He said Mr. Bertelson was "anxious not to have too much food in the Sunday paper, but to devote more attention to food during the the week, and to keep it under our own food editor, Mrs. Brainard"; that the first step in dropping "My Favorite Dish" would be to drop the by-line for two or three weeks and then drop the feature.

Both of the letters from defendant's editors contained statements to the effect that appellant was not and never had been the author of "My Favorite Dish", which, according to plaintiff's evidence and to the commonly accepted meaning of "by-line" in the dictionary, was not the truth. The dictionary defines "by-line" as "A line at the head of a newspaper or magazine article giving the writer's name", Webster's New International Dictionary, 3rd Ed. Unquestionably, defendant newspaper, over a period of years, held plaintiff out as the author of the feature "My Favorite Dish". There is substantial evidence in the record that the two letters to the contrary were libelous. They directly imputed that plaintiff, whose profession or business, according to her evidence, was that of an author and authority on cooking (based in large part on the "My Favorite Dish" series) was not its author and had only a minor part in its production. The letters come close to making her out a fraud.

The parties tried this case on the theory, and seem to be in complete agreement on appeal, that the Post Dispatch had a qualified privilege and we will take them at their word. In determining whether plaintiff made a submissible case, we must determine whether there is the required proof of malice in the record to overcome the qualified privilege, looking at the evidence in the light most favorable to plaintiff.

The excuse the defendant's editors gave for their letters, which the jury could find did not tell the full truth about plaintiff's connection with "My Favorite Dish", was that they, in good faith, believed what they wrote to be true. The fact is that over a period of years, in 52 issues per year, something over 600 times, defendant by publishing "My Favorite Dish" over plaintiff's by-line, held Mrs. Lazier out to its readers as the author, a belief which, we feel safe in saying, was shared by the readers. Mr. Bertelson's motive behind his letter, the jury could find, was more to promote reader acceptance of the change he knew was in the offing—the dropping of the feature—and the "bolstering" of the paper's regular food editor and her food articles in the daily paper, so as to retain Mrs. Nordman and others like-minded as purchasers of the paper, than it was to inform Mrs. Nordman of the facts as he believed them to be on plaintiff's part in "My Favorite Dish"; that defendant wanted to lead its readers to believe the removal of plaintiff's name as the apparent author of "My Favorite Dish" would in no wise lessen the quality of future articles, because plaintiff had never been the author, had handled only aspects of the publication not involving cooking expertness, and the real author remained unchanged. Likewise, as to Mr. Bransted, the jury could have believed from the evidence that, he, too, had another ax to grind than merely expressing his honest, though mistaken, belief, as to what plaintiff did in writing the article; that he was minimizing plaintiff's part so as to make more acceptable to the defendant's readers the change he knew was coming in the foods part of the newspaper, where Mrs. Lazier would be out and someone else would be presented as the paper's expert on the subject. There was evidence therefore, from which the jury could infer bad faith, improper motives, and actual malice, which would destroy the qualified privilege and permit a recovery, Skain v. Weldon (Mo. Sup.) 422 S.W.2d 271. We hold that plaintiff made a submissible case.

This case was tried in May 1969, and plaintiff used M.A.I. instruction 23.06 as it

then appeared. The only defensive instruction was defendant's No. 6 which did not then and does not now appear in M.A.I. and which read: "The phrase 'reckless disregard of whether they were true or false' as used in these instructions means that the writers of the letters entertained serious doubts as to the truth of the statements and made them with a high degree of awareness of their probable falsity." We agree with plaintiff that the instruction is prejudicially erroneous because it purports to define a phrase which does not appear in any of the instructions, Epps v. Ragsdale (Mo.App.) 429 S.W.2d 798. At first glance, it seems to relate to the case because it refers to "writers of the letters" and uses the words "reckless disregard", which do appear in plaintiff's verdict-directing instruction, yet it purports to define a phrase which does not appear anywhere in the instructions. So, the instruction on one hand seems to apply and, yet, literally, it does not apply. This is not an approved method of instruction.

■ Defendant argues that plaintiff is a public figure and, hence, is in the same category as public officials, New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and so M.A.I. 23.06 was not proper to use in this case anyway, even if No. 6 does purport to define a phrase which is not found in 23.06. However, we see no reason why 23.06 is not adequate for use in the case at bar. While plaintiff alleged that she had a national and international reputation as an expert in fine cooking, the evidence shows that her main claim to fame is as author of the illustrated article "My Favorite Dish" and by no stretch of the imagination can plaintiff be considered a public figure so widely known that the rule as to public officials should apply to her in this libel action. Plaintiff did not have access to public communication the way that a true public figure would have. This is not a case where plaintiff has drawn herself into the middle of any sort of intense public controversy; there is no indication that plaintiff has ever been the subject of substantial press, radio, or television news comment or that she occupies a place in the public eye to the point where it is quite likely that her activities might be erroneously reported either by the newspaper as a newspaper, or by its editors in replying to letters about her from readers (see cases in 19 A.L.R.3d 1379–1384). There is no sound reason we can see why Mrs. Lazier should be required to prove anything more to make out a case against the defendants than is required by M.A.I. 23.06, and we need go no further than this to decide the case before us.

■ One other thing should be mentioned since the case is being remanded for a new trial: there is no dispute that Mrs. Nordman received the letter written her by Mr. Bertelson. The Post Dispatch, however, says there is no proof that Mrs. Nordman, who died before the trial, ever opened and read the letter, and, hence, no proof of its publication, one of the elements of every libel action. At the trial, the court seemed to go on the assumption that once the defendant admitted writing the letters, that was all plaintiff had to prove, and sustained objections of the defendant going to questions as to how plaintiff came to be in possession of Mr. Bertelson's letter to Mrs. Nordman. It appears from offers of proof that plaintiff is in a position to testify she received the Bertelson letter as an enclosure in a letter addressed to her, delivered in the mail, in an envelope bearing the return address of Mrs. Nordman. Thus, it is a fair inference that Mrs. Nordman sent plaintiff the Bertelson letter and it also is a fair inference that Mrs. Nordman, who wrote the Post Dispatch and enclosed a stamped addressed envelope for a reply, opened and read the Bertelson letter when she received it. It has been held that "The delivery of a letter to one capable of reading it is sufficient to support an inference that the letter was read so as to leave it to the trier of the facts to say whether, if the letter was received, the addressee acquired actual notice of its contents * * *",

James v. Hutchinson (Mo.App.) 211 S.W.2d 507, 510. In addition, in the present case, there is the factor that Mrs. Nordman was interested enough in finding out the answer to her question that she furnished the Post Dispatch with a stamped addressed envelope, which the defendant used for its reply, so the jury could reasonably infer Mrs. Nordman recognized the letter when it arrived and opened it to see what the Post Dispatch had to say. We overrule defendant's contention that the required publication cannot be shown as to the Bertelson letter. As to the Bransted letter, publication is conceded.

Reversed and remanded.

All of the Judges concur.